# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Criminal Action No. 17-10-LPS |
| | ) | |
| TORON O. CROCKER, | ) | |
| | ) | |
| Defendant. | ) | |

## THE GOVERNMENT'S TRIAL MEMORANDUM AND OMNIBUS MOTION IN LIMINE

## TABLE OF CONTENTS

LEGAL BACKGROUND ............................................................................................2

SUMMARY OF TRIAL EVIDENCE......................................................................4

   A.  The  Interview.............................................................................................5

   B.  The Dropbox Account ...............................................................................7

   C.  The Cellular Phones...................................................................................8

   D.  The Gateway Computer and Seagate Hard Drive ...............................10

TRIAL PRESENTATION......................................................................................11

   A.  Stipulations...............................................................................................11

   B.  Case Agent Michael Lipsner ..................................................................12

   C.  Certified Forensic Examiner Todd Heller.............................................13

   D.  The Victims' Mother................................................................................13

   E.  Other Witnesses .......................................................................................14

   F.  The Victims and 18 U.S.C. § 3509 ..........................................................14

MOTIONS IN LIMINE..........................................................................................15

   A.  The Court Should Review and Admit the Child Pornography Videos the Government
      Intends to Play at Trial.............................................................................15

   B.  Evidence of the Defendant's Sexual Attraction to Children Is Admissible to Prove
      His Motive and Intent in Producing the Sexually Explicit Videos of His Daughters .......19

   C.  The Court Should Exclude Evidence and Argument Regarding the Statutory Penalties..22

   D.  The Court Should Preclude Any Argument Regarding Victim Consent...........................23

   E.  The Government Should Be Permitted to Rely on Trade Inscriptions to Prove
      Country of Origin for Electronic Devices ..........................................................................23

   F.  The Court Should Admit the Victims' Birth Certificates Pursuant to FRE 803(9).............25

CONCLUSION .......................................................................................................26

This is a production of child pornography case.  The defendant repeatedly molested his two pre-teen daughters for years and filmed this activity on a number of occasions prior to his arrest in early 2017.  He produced and stored these videos on his cell phones, as well as uploaded a number of them to his Dropbox account. Moreover, he kept a small collection of additional child pornography on his home computer, which he downloaded from the Internet.   He admitted to the lion's share of the above in a post-*Miranda* interview, but denied having a sexual interest in children.

For his conduct, the defendant has been charged with three crimes.  (D.I. 70) (superseding indictment).   Counts One and Two charge the defendant with Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) & (e) – one count for each of the victims.   Count Three charges the defendant with Possession of Child Pornography Involving a Minor under 12 Years of Age, in violation of 18 U.S.C. § 2252A(a)(5)(B) & (b)(2); this offense relates to the child pornography found on the defendant's electronic devices, including the images and videos of other children he kept at his residence.

Trial is scheduled to begin on October 5, 2021.  The government files this Trial Memorandum and Omnibus Motion in Limine for two related reasons.   First, it provides legal background for the case as well as an outline of the evidence the government expects to introduce at trial.  By providing this overview, the government hopes to assist the Court in the trial of this matter, as well as tee up any evidentiary disputes by the pretrial conference – thereby avoiding unnecessary sidebars during

the trial itself.   Second, and for similar reasons, the government moves in limine to

admit and preclude certain evidence prior to trial.

## LEGAL BACKGROUND

In order to convict the defendant of Production of Child Pornography, the

government must establish the following:

(1) The victim was under the age of 18;

(2) The defendant knowingly used[1] the victim to take part in "sexually explicit
    conduct" – which includes actual or simulated sexual intercourse, oral sex,
    masturbation, or a "lascivious exhibition of the genitals or public area";[2]

(3) The defendant acted with the purpose of producing[3] a visual depiction of
    such conduct;[4] and

(4) One of the following jurisdictional elements is satisfied:

    a. The visual depiction was produced using materials that had been

---

[1] In this context, "use" does **not** require a child's "conscious or active participation."
*United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013).  Rather, the "use" component
is fully satisfied for the purposes of the child pornography statute if a child is
photographed in order to create pornography."  *United States v. Sirois*, 87 F.3d 34, 41
(2d Cir. 1996); *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007) (same); *Ortiz-
Graulau v. United States*, 756 F.3d 12, 18 (1st Cir. 2014) (same and citing cases).

[2] 18 U.S.C. § 2256(2)(A) (defining "sexually explicit conduct").  The "lascivious
exhibition" of genitalia includes any "depiction which displays or brings forth to view
in order to attract notice to the genitals or public area of children, in order to excite
lustfulness or sexual stimulation in the viewer."  *United States v. Knox*, 32 F.3d 733,
745 (3d Cir. 1994)

[3] "Producing" in this context can be as simple as "creating or making" the visual
depiction in question.  *Fadl*, 498 F.3d at 867.

[4] While the defendant must use the victim for the "purpose of producing a visual
depiction of such conduct," that use need not be the "sole" purpose.  *United States v.
Frei*, 995 F.3d 561, 566-67 (6th Cir. 2021) (collecting cases and stating that "no court
has held that the defendant must be single-minded in his conduct").

transported across state lines or in foreign commerce by any means;

    b.  The visual depiction was actually transported across state lines; or

    c.  The visual depiction was actually transmitted using any means or facility of interstate or foreign commerce – including by a cell phone network or the Internet.[5]

18 U.S.C. § 2251(a); 8th Cir. Model Crim. Jury Instr. § 6.18.2251(A) (2020).

To convict the defendant of Possession of Child Pornography Involving a Minor under 12 Years of Age, the government must establish:

(1) The defendant knowingly possessed;

(2) Any computer disk or other material;

(3) Containing a visual depiction of a minor engaged in sexually explicit conduct;

(4) The minor was either prepubescent or had not attained 12 years of age; and

(5) One of the following jurisdictional elements is satisfied:

    a.  The material containing the visual depiction was produced using materials that had been transported in interstate or foreign commerce; or

    b.  Were transported in interstate or foreign commerce by any means, including by computer.

18 U.S.C. § 2252A(b)(2); 8th Cir. Model Crim. Jury Instr. § 6.18.2252 (2020).

---

[5] *United States v. Tykarsky*, 446 F.3d 458, 470 (3d Cir. 2006) (describing the Internet as a "facility," "instrumentality," and "channel" of "interstate commerce") (cleaned up); *United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006) ("[B]ecause of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data ha[ve] traveled in interstate commerce."); *United States v. Graham*, No. 14-623-1, 2020 WL 9596330, at *6 (E.D. Pa. Feb. 21, 2020) (jury instructions describing a "telephone network" and the Internet as "facilities of interstate commerce").

## <u>SUMMARY OF TRIAL EVIDENCE</u>

Operation Rescue Me is a partnership between FBI Headquarters and the National Center for Missing and Exploited Children ("NCMEC"), which focuses on identifying the victims depicted in child exploitation material and child pornography. In late 2016, NCMEC sent a series of videos to Operation Rescue Me that were recovered from two related FBI investigations.

The videos depict a prepubescent black girl performing oral sex on, and masturbating with, an adult black male. The FBI was able to identify the defendant from these videos. In both, the defendant's face is visible. In one video, there is a clear shot of his face and chest tattoo; the chest tattoo is the name of the defendant's oldest daughter. A screenshot from this video is below; the tattoo of his daughter's name is on his left pectoral muscle (circled in red below, but partially redacted to keep the victim's identity confidential).



Shortly after identifying the defendant, in early February 2017 the FBI obtained federal search warrants for his person and residence.

4

The defendant was on state probation at the time.  In order to facilitate an interview in a controlled environment, the FBI coordinated with his supervising officer to arrange for the defendant to show up at the New Castle state probation office on the morning of February 8, 2017.  Shortly after his arrival, agents detained the defendant.

Pursuant to the warrant, agents took photographs of the defendant's person. These photographs confirmed that the defendant was the same male individual as in the videos provided by Operation Rescue Me.  An example is below (again, the defendant's tattoo of his daughter's name is partially redacted).



## A. The Interview

The defendant subsequently waived his *Miranda* rights and consented to an interview with the agents.  He was shown an image from one of the videos.   The defendant explained that his daughters were 8 and 10, and that the image was of a room at his mother's residence in Newark, Delaware, where he was living in 2015. He believed that the image was taken from a video he made several years prior.

Crocker initially stated that his daughter took the video, but after he was shown a portion of the film demonstrating that the camera was in his hand, he

admitted making the video with a cell phone no longer in his possession. He claimed that his daughters initiated sexual activity with him by performing oral sex on him when they were 3 and 5. The defendant also indicated that his oldest daughter would get on top of him, sit astride, and "pleasure" herself. The defendant said that he really needed "help" because this was "messing" him up. When asked how often this would happen, Crocker estimated every month or so.

Crocker admitted that he had made other videos besides the ones in the FBI's possession – including some that took of the girls "naked." He explained that the videos were either filmed at his mother's house (where he stayed previously), or at his current residence in Wilmington. He also said that his phone had a "recent" video of his oldest daughter from about "three weeks ago," but claimed that his younger daughter filmed the activity without his knowledge. Crocker also admitted that he had other child pornography --- i.e., "kids" who were "under 18" --- on his electronic devices. In particular, he stated that it was on his home "Gateway" computer and that he received it from a "guy" on the "Internet" " years ago." Despite all of the above, the defendant stated that he did not have a sexual interest in children.

Much of the interview centered on how the videos in question left the defendant's possession and made their way to the FBI. The defendant admitted that he had a Dropbox account associated with email address "toroncrockerdr@gmail," which he used to upload a number of sexual videos involving his daughters. He maintained, however, that – despite receiving child pornography from a person online

– he never intended anyone else to view those videos.   As of February 2017, the defendant believed that "less than 10" such videos would still be on his account.

## B. The Dropbox Account

The government obtained a search warrant for Dropbox records for the following account, which the defendant identified as his own:

```
Name: Ron Crocker
Email: toroncrockerdr@gmail.com
User ID: 475323185
Joined: Sat, 03 Oct 2015 12:41:42 GMT
Subscription Status: Free
```

Along with this account information, Dropbox produced a listing of the files uploaded into the account, including some which were deleted.   Highlighted in blue are the videos remaining on the account when the search warrant was executed.

| user_id | timestamp | action | size | path |
|---|---|---|---|---|
| 475323185 | Sat, 03 Oct 2015 12:41:42 GMT | added | 692088 | /Get Started with Dropbox.pdf |
| 475323185 | Thu, 08 Oct 2015 05:23:34 GMT | added | 153744760 | /VID_20151007_221434.mp4 |
| 475323185 | Thu, 08 Oct 2015 05:34:54 GMT | added | 433718220 | /VID_20151007_221555.mp4 |
| 475323185 | Thu, 08 Oct 2015 06:16:23 GMT | added | 86788891 | /VID_20151007_222042.mp4 |
| 475323185 | Sat, 05 Dec 2015 15:12:17 GMT | added | 788154 | /filesscreen.png |
| 475323185 | Thu, 25 Aug 2016 15:39:51 GMT | added | 4169022 | /camera-a.jpg |
| 475323185 | Thu, 25 Aug 2016 15:40:33 GMT | added | 3660101 | /image-20160819_003011.jpg |
| 475323185 | Thu, 25 Aug 2016 15:41:13 GMT | added | 3689256 | /image-20160819_003953.jpg |
| 475323185 | Thu, 25 Aug 2016 15:41:51 GMT | added | 4169022 | /image-20160819_004418.jpg |
| 475323185 | Thu, 25 Aug 2016 16:02:34 GMT | added | 107834300 | /20160819_005623.mp4 |
| 475323185 | Thu, 25 Aug 2016 16:24:49 GMT | added | 118237485 | /20160819_005737.mp4 |
| 475323185 | Thu, 25 Aug 2016 16:44:27 GMT | added | 107225385 | /20160819_005857.mp4 |
| 475323185 | Thu, 25 Aug 2016 17:22:08 GMT | added | 173537316 | /20160819_010550.mp4 |
| 475323185 | Thu, 25 Aug 2016 17:54:01 GMT | added | 164245968 | /20160819_011957.mp4 |
| 475323185 | Thu, 25 Aug 2016 18:47:52 GMT | added | 282269022 | /20160819_012341.mp4 |
| 475323185 | Wed, 31 Aug 2016 17:52:04 GMT | added | 2969230 | /20160819_032713.jpg |
| 475323185 | Sat, 03 Sep 2016 22:54:40 GMT | added | 1063084545 | /20160819_012640.mp4 |
| 475323185 | Sun, 04 Sep 2016 11:35:43 GMT | deleted | -1 | /filesscreen.png |
| 475323185 | Sun, 04 Sep 2016 11:35:51 GMT | deleted | -1 | /Get Started with Dropbox.pdf |
| 475323185 | Thu, 08 Sep 2016 14:06:26 GMT | deleted | -1 | /20160819_011957.mp4 |
| 475323185 | Thu, 08 Sep 2016 14:08:14 GMT | deleted | -1 | /20160819_005623.mp4 |
| 475323185 | Thu, 08 Sep 2016 14:09:13 GMT | deleted | -1 | /20160819_005857.mp4 |
| 475323185 | Thu, 08 Sep 2016 14:09:23 GMT | deleted | -1 | /image-20160819_003011.jpg |
| 475323185 | Thu, 08 Sep 2016 14:09:34 GMT | deleted | -1 | /camera-a.jpg |
| 475323185 | Thu, 08 Sep 2016 14:09:53 GMT | deleted | -1 | /20160820_032713.jpg |
| 475323185 | Thu, 08 Sep 2016 14:20:56 GMT | deleted | -1 | /20160819_005737.mp4 |

Although there are six total, there are essentially two series of videos – each depicting one of the defendant's daughters involved in various forms of child pornography.  In the first series, the defendant's face and chest tattoo are visible.   In the second, the defendant's voice can be heard; moreover, his daughter refers to him as "Daddy" several times.

### C. The Cellular Phones

The FBI seized a number of phones connected to the defendant on the day of his arrest.  Two are relevant here.  The first, a Samsung SM-J700P was seized from the defendant's person.  The phone is equipped with a video camera and was manufactured in China.

 

After performing a forensic examination of the device, the FBI located child pornography videos on the phone that appear to have been made with the defendant and his eldest daughter.

The second cell phone is a Samsung Galaxy S5.  This device was found on the front seat of the defendant's truck, which he drove to the probation office on the day of his arrest.

8




This device was likewise outfitted with a camera and was made in China.




The Samsung Galaxy S5 was forensically examined and found to contain child pornography.  With regard to the defendant's eldest daughter, a number of videos that the defendant uploaded to Dropbox were also found on this device, as well as additional clips that appear to have been filmed the same day.  The device also contains a video depicting his youngest daughter.   The defendant's face is visible in a portion of the video and he is holding the phone.   At one point, his daughter asks him, "Are you taking a video?"

**D. The Gateway Computer and Seagate Hard Drive**

The same day as the defendant's arrest, agents searched his residence in Wilmington, Delaware.   There, agents located and seized a silver Gateway computer tower from a bedroom there.



The hard drive was manufactured in China.



10

A forensic review revealed that it contained the following:

- Email addresses and other data demonstrating that the device was used by the defendant.

- Metadata indicating that Dropbox was installed on 10/5/2015, and last accessed on 1/31/2017.

- Approximately 10 child pornography videos of children who were not the defendant's daughters, with creation dates ranging from 10/3/2015 through 8/9/2016.

- 28 child pornography images of children who were not the defendant's daughters.

- Numerous child erotica images and videos.

- Internet artifacts consistent with the defendant utilizing Dropbox to obtain child pornography, including some of the videos seized from his computer.

- Google searches for "sexy 8 yo, "exploited black teens," and "little black girls naked."

- Pornography URLs with site names such as "black teen masturbates on web cam," and "Black teen with small tits having sex."

## TRIAL PRESENTATION

The parties have had discussions about this case, to include in-person meetings where much of the above evidence was presented. The government does not anticipate that the matters discussed below will elicit any particular objections from defense counsel, but provides a general summary nonetheless.

### A. Stipulations

The parties have had initial discussions about potential trial stipulations, to include interstate nexus witnesses (e.g., Samsung, Dropbox), as well as records

custodians (Google, Dropbox, and the Delaware Office of Vital Statistics).  The parties will update the Court with any developments on this front.

## B. Case Agent Michael Lipsner

The government intends to call the case agent, FBI Special Agent Michael Lipsner, as a trial witness.  Special Agent Lipsner will provide an overview and summary of the case – to include how the investigation began, who was involved, and what techniques were used.  He will also connect the dots between different pieces of evidence.  This is proper.  *See, e.g., United States v. Lacerda*, 958 F.3d 196, 207-10 (3d Cir. 2020) (affirming use of so-called overview testimony).

Agent Lipsner will also testify about specific evidence that he gathered in the case, such as:  his interview of the defendant; the cellular phones seized, including the child pornography videos located therein; and Dropbox records, including the child pornography videos found there.  Agent Lipsner may also offer lay opinion testimony pursuant to Rule 701 as to matters within his training and experience, such as certain Internet shorthand – e.g., that a Google search for a "sexy 8 yo" refers to a "sexy 8 year-old."  *United States v. Savage*, 970 F.3d 217, 284-87 (3d Cir. 2020) (holding that an agent may provide lay opinion testimony regarding coded terms, provided that the information leading to that opinion comes from his personal experience).

Finally, the government expects that Agent Lipsner will identify the defendant in several of the above videos based on his image and voice.  This identification will

12

be based on Agent Lipsner's interaction with the defendant during the investigation – to include an extensive face-to-face interview and examination of his person.

### C. Certified Forensic Examiner Todd Heller

The government also intends to call FBI certified forensic examiner Todd Michael Heller at trial, who will provide testimony regarding the forensic extractions and examinations of the devices located at Mr. Crocker's residence, on his person, and in his vehicle, as well as the results therefrom. Since some of this testimony will focus on technical information relevant to the devices and the videos found thereon – such as file paths, metadata, EXIF data, naming conventions, creation dates and times, and why certain data is available or unavailable – the government expects to qualify Mr. Heller as an expert pursuant to FRE 702. A summary of Mr. Heller's expected testimony and qualifications, as well as his expert reports and working papers, have been provided to the defense.

### D. The Victims' Mother

The government will call the victims' mother,[6] who will identify the defendant and the victims based on sanitized screenshots taken from the videos in this case. She will also testify about her custody arrangement with the defendant at the time of the charged offenses, as well as identify the defendant's residences and vehicle.

---

[6] This witness's name is not included herein in order to protect the identity of the victim children.

13

### E.  Other Witnesses

The government also expects to call several FBI witnesses who either participated in the search of the defendant's residence or will otherwise testify concerning the evidence collected in the case.  Assuming a stipulation is not reached, the government also expects to call company representatives associated with Samsung, Seagate, and Dropbox.  A comprehensive witness list will be provided to the Court before trial begins.

### F.  The Victims and 18 U.S.C. § 3509

The victims in this case have a statutory right to privacy.  *See* 18 U.S.C. § 3509(d).  The government is currently exploring the best way to safeguard these rights, while allowing the parties to present their cases in an effective manner.  This may include a protective order to close the courtroom during the testimony of certain witnesses  *See* 18 U.S.C. § 3509(d)(3).  For similar reasons, the government expects that it will seek to take measures to keep the child pornography exhibits protected from public view – for example, by only displaying them on a screen visible to the jury, the parties, and the Court.  The government will confer with defense counsel on these topics and will have a suggested path forward by the pretrial conference.

The government does not intend to call either of the victim girls as witnesses in this case.  If the defendant elects to do so, there are various provisions of 18 U.S.C. § 3509 that will come into play, to include:  the right to an adult attendant; potential testimony via two-way closed circuit television; and whether a guardian ad litem

should be appointed.  *See* 18 U.S.C. § 3509(b), (h), (i).   Thus, the government flags

this issue for discussion at the pretrial conference if necessary.

## MOTIONS IN LIMINE

**A. The Court Should Review and Admit the Child Pornography Videos the Government Intends to Play at Trial.**

There are two counts of child pornography production in this case – one for

each of the defendant's daughters.  As evidence of these crimes, the government

intends to play excerpts from videos that the defendant recorded of each victim – his

youngest daughter MINOR A, and his eldest daughter MINOR B – which were

recovered from the defendant's electronic devices and his Dropbox account.   These

videos can be grouped in the following categories:

- **Clips of MINOR A from October 7, 2015** – In these videos, MINOR A is 7 years old.  She disrobes, and the camera focuses on her naked vagina.  She then straddles an adult male.  Both individuals are nude from the waist down, and MINOR A grinds her naked vagina against the man's pelvis; the man then rubs his penis against her buttocks and anus.  MINOR A performs oral sex on the man and the man pulls MINOR A's hair back to show her face.  At select portions of the video, the defendant's face and distinctive chest tattoo are visible; and it is also clear from select portions that the defendant is holding the camera.

- **Clips of MINOR B from August 19, 2016** – In these videos, MINOR B is 10 years old.  MINOR B takes a shower.  The camera focuses on her genitalia.  At a later point MINOR B is on a bed; again the camera focuses on her genitalia.  At several points, the person behind the camera manipulates MINOR B's body.   For example, while MINOR B is on her stomach, a male voice – which can be identified as the defendant – instructs her to get on her "knees" and "go as high" as she can for "ten seconds."   A hand then manipulates her vagina and focuses the camera in that area.  At various portions in this series of videos, MINOR B refers to the person behind the camera as "Daddy."

15

- **Clips of MINOR A from August 20, 2016** – In this video, a male voice tells MINOR A, who is 8 years old, to close the door. MINOR A then strokes the man's penis. A male voice – which can be identified as the defendant – asks her if she wants to "kiss it." She does. The male voice then instructs MINOR A to take her panties off. MINOR A asks the man, "Are you taking a video?" The man then strokes his penis with MINOR A on top of him. At various points, he rubs his nude penis against her naked buttocks and vaginal area. At certain points, you can see parts of the defendant's face; he is also holding the camera.

- **Clips of MINOR B from January 15, 2017** – In these videos, MINOR B is 10 years old. A female child's voice, which can be identified as MINOR A, says "All right. It's ready." MINOR B then takes off her panties, gets on top of and astride the defendant, and rubs her vagina against his pelvis. The defendant has a sock on his penis and rubs it against MINOR B's anus/vagina. He occasionally looks at the video camera. The sounds of pornography are audible in the background. Towards the end of the video, a young female voice (MINOR A) says "Cut it? Dad, cut it?" After MINOR B dismounts the defendant, he masturbates with the sock on his penis. Once more, a young female voice says "Cut it? Dad, cut it?"

In addition to these videos,[7] the government intends to have a witness generally describe the child pornography found on the defendant's Gateway computer at his residence and play a short excerpt from one of the videos recovered therefrom.

---

[7] As set forth in the above descriptions, these videos contain audio. The statements included therein are admissible under the hearsay rules for a host of reasons. First, and most importantly, the audio is evidence of the sexual nature of the videos themselves. *United States v. Petroske*, 928 F.3d 767, 772 (8th Cir. 2019) (statements in videos relevant "for the jury to consider whether the videos on their face were of a sexual nature"). Under this rationale, the defendant's statements as well those of his daughters are not hearsay at all, because their primary relevance is not to prove the truth of any matter asserted therein. *See* FRE 801(a) & (c). Rather, the audio is relevant to "show the context" within which the parties were acting and to demonstrate the defendant's motive in making the videos. *See* 5 Weinstein & Berger, Weinstein's Evidence § 801.11[5][b] (2011) (citing cases admitting out-of-court statements under this rationale). Along a similar vein, the girls' questions of their father (e.g., whether the defendant was "taking a video" and whether she should "cut"

At present, the defendant has not objected to any of the above on Rule 403 grounds or otherwise.   Nevertheless, the prudent course is for the Court to view this evidence in advance of trial to ensure that the probative value of these materials is not substantially outweighed by the danger of unfair prejudice.  *See* FRE 403; *United States v. Cunningham*, 694 F.3d 372, 386-87 (3d Cir. 2012) (holding that "generally" speaking the court should "personally examine" child pornography evidence "before deciding to admit it under Rule 403.").   Further, the Court should put its reasoning on the record.  *United States v. Lacerda*, 958 F.3d 196, 223 (3d Cir. 2020).

The probative value of the videos the defendant produced is high.   A key issue in this case will be the defendant's intent in creating the videos in question.

---

a recording) are not assertions under FRE 801(a).  *See id.* § 801.11[2] ("Courts have generally held that questions are not hearsay because they are not assertions.") (citing cases).   Likewise, the audio of his daughters calling him "Daddy" does not contain hearsay, because "using someone's name in a conversation is not an assertion."  *United States v. Perez-Vasquez*, --- F.4th --- 2021 WL 3140521 at *10 (1st Cir. July 26, 2021).

Moreover, to the extent that the audio contains "statements" as defined by Rule 801(a), those statements are either nonhearsay or fall within the scope of established hearsay exceptions.  The defendant's statements are those of a party opponent.  *See* FRE 801(d)(2) (opposing party's statement is not hearsay).   His daughters' statements are admissible as evidence of their then-existing state of mind, to describe events they were then perceiving, and/or to explain their actions at the time.  FRE 803(1) (permitting a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it"); FRE 803(3) (permitting a "statement of the declarant's then-existing state of mind . . . or emotional, sensory, or physical condition"); *United States v. Donley*, 878 F.2d 735, 737 (3d Cir. 1989) (FRE 803(3) permits statements to "prove or explain acts or conduct of the declarant").   And of course, the girls' comments are also relevant to provide context for the defendant's statements. *See, e.g.*, *United States v. Browne*, 834 F.3d 403, 416 n. 10 (3d Cir. 2016) (affirming admission of statements in "chat logs" between victims and the defendant, because the victims' statements put the defendant's "statements into perspective" and made them "intelligible to the jury and recognizable as admissions") (cleaned up).

17

Throughout his custodial interview, he maintained that he did not have a sexual interest in children.   Therefore, the government expects that the defendant will make a similar argument at trial – namely, that he did not engage in the above activity for the purpose of producing a video of "sexually explicit conduct."   As the Court will see, the proffered evidence is highly probative of this issue, as the videos demonstrate his true intent in making them.   Indeed, the videos themselves are the best evidence of the crimes charged.   They should be admitted.

Moreover, as the Third Circuit has recognized, when the defendant's intent is a crucial issue in a child pornography case, the probative value of the videos is much greater than "run-of-the-mill cases of simple possession." *United States v. Heatherly*, 985 F.3d 254, 266-68 (3d Cir. 2021).   In simple possession cases, defendants typically stipulate that the material at issue is child pornography.   Thus, showing the material to a jury merely proves an element that no one disputes.   *Id.* at 268.   However, when the child pornography at issue sheds light on the defendant's intent, it is something that the jurors have to see "firsthand." *Heatherly*, 985 F.3d at 266-68 (affirming admission of "horrifying" violent and sadistic child pornography shown in Zoom conference room to demonstrate the defendants' intent in being there).   Such is the case here.

And while it is certainly true that the child pornography in this case is "disturbing," that is simply because "the alleged crimes themselves" are "disturbing." *Id.* at 266.   Rule 403 is not a "shield" to keep juries from learning the details of crimes

18

likes these.  *Id.*   Thus, the defendant will not be unfairly prejudiced by evidence of the videos he created.

**B.  Evidence of the Defendant's Sexual Attraction to Children Is Admissible to Prove His Motive and Intent in Producing the Sexually Explicit Videos of His Daughters**

In addition to the videos the defendant produced, the government intends to offer evidence of items and records found on his home computer, including:  child pornography videos and images; child erotica videos and images;[8] records of Internet searches for topics such as "little black girls naked"; Internet artifacts consistent with using Dropbox to obtain child pornography; and records of URLs with site names such as "black teen masturbates on web cam."[9]  The lion's share of this evidence directly proves Count Three, which charges the defendant with possession of child pornography, and is admissible on that basis.   As set forth below, however, the government likewise intends to argue that this evidence demonstrates that the defendant had a sexual interest in children, which is probative of his specific intent in producing the videos at issue in Counts One and Two.

---

[8] As used here, "child erotica" is material that "depicts young girls as sexual objects or in a sexually suggestive way, but is not sufficiently lascivious to meet the legal definition of sexually explicit conduct under 18 U.S.C. § 2256."  *United States v. Vosburgh*, 602 F.3d 512, 520 n.7 (3d Cir. 2010).

[9] All of the above has been produced in discovery, summarized in expert reports, and/or disclosed to the defendant through in-person evidence review.  This motion, filed 50 days before trial is scheduled to begin, satisfies any notice required by the rules set forth below.  *See* FRE 404(b)(3); FRE 414(b).

It is "generally accepted" that "evidence of a defendant's sexual attraction to children (or teenagers) is probative of the specific intent element of criminal statutes involving sexual activity with minors." *United States v. Lieu*, 298 F. Supp. 3d 32, 52-53 (D.D.C. 2018) (citing cases). The Third Circuit in particular has repeatedly held that evidence demonstrating a sexual interest in children is relevant to proving a defendant's intent in committing child pornography offenses. *See, e.g., Heatherly*, 985 F.3d at 269-70 (possession of child pornography admissible to demonstrate defendants' sexual interest in children when entering a Zoom room); *United States v. Brown*, 862 F.2d 1033, 1038-39 (3d Cir. 1988) (defendant's "knowing receipt" of child pornography "demonstrated by his strong interest" in same, "as evidence by the collection of child pornography and his solicitation of child pornography as expressed in" correspondence); *United States v. Lee*, 701 Fed. App'x. 175, 182-84 (3d Cir. 2017) (holding that "sexually explicit stories" the defendant wrote featuring young boys "strongly suggest" that he took images of their genitalia with "the requisite intent" of producing child pornography and affirming the admission of same pursuant to Rule 404(b)).

The child pornography found on the defendant's home computer, as well as the steps the defendant took to obtain these materials, is admissible to prove the defendant's intent in producing the videos of his daughters pursuant to FRE 414. Rule 414 provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation" to prove "any matter to which it is relevant" – such as the

defendant's intent.   FRE 414(a); *Heatherly*, 985 F.3d at 269-70 (admitting child pornography pursuant to FRE 414 as evidence of the defendant's intent); *see also United States v. Cunningham*, 607 Fed. App'x. 715, 716-17 (9th Cir. June 8, 2015) (affirming admission of possession of child pornography under Rule 404(b) because it demonstrated that the defendant had "sexual feelings for children and that he did not inadvertently take sexually explicit photographs of the victim").   Possession, receipt, and production of child pornography all qualify as crimes of "child molestation" under FRE 414.   *See* FRE 414 (defining "child molestation" as any "conduct prohibited by 18 U.S.C. chapter 110," which includes 18 U.S.C. §§ 2251 and 2252A)).

The remaining evidence is admissible pursuant to FRE 404(b).   Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."   FRE 404(b)(1).   However, the same evidence may be admissible for a nonpropensity purpose, such as proving "intent," "motive," or "lack of accident."   FRE 404(b)(2).   The defendant's sexual interest in children is highly probative of his intent and motive in filming his daughters engaged in sexually explicit conduct.   Thus, the Internet searches, URL visits, and child erotica found on his home computer are admissible to demonstrate this interest, intent, and motive. *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010) (affirming admission of child erotica because it demonstrated the defendant's "sexual interest in children" and thus disproved any argument that he possessed child pornography by accident);

*United States v. Lee*, 701 Fed. App'x. 175, 182-84 (3d Cir. 2017) (affirming admission of "sexually explicit stories" the defendant wrote featuring young boys as evidence of his "motive" and "intent" in producing sexually explicit photos of youth); *United States v. Griffin*, 783 Fed. App'x. 881, 883-84 (11th Cir. 2019) (admitting Internet browsing history to demonstrate knowing possession of child pornography).

And the probative value of the above evidence is not substantially outweighed by the danger of unfair prejudice.   FRE 403.   As set forth above, the evidence is highly probative of the defendant's intent in producing the sexually explicit videos at issue in Counts One and Two.   Indeed, some of the child pornography and other materials found on the defendant's home computer are strikingly similar to the videos the defendant created himself.   Moreover, the government intends to summarize most of this evidence through the case agent and/or the forensic examiner.   Accordingly, unless the defendant otherwise calls these summaries into question, the presentation of the above evidence will be limited in scope, thereby ensuring that there is no unfair prejudice.

## C. The Court Should Exclude Evidence and Argument Regarding the Statutory Penalties

Neither party should be allowed to elicit evidence or argue about the potential penalties associated with the charges in this case.   *United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993) ("[F]ederal criminal juries are almost never instructed concerning the consequences of verdicts.   On the contrary, they are often specifically instructed not to consider those consequences."); Third Circuit Model Crim. Jury

Instr. § 3.16  (Nov. 2018) ("You should never consider the possible punishment in reaching your verdict.").

### D. The Court Should Preclude Any Argument Regarding Victim Consent

As set forth above, in his interview with the FBI, the defendant was adamant that his daughters were willing participants in his sexual activity with them.  To the extent that he wishes to advance this as an argument at trial, he should be precluded from doing so.  Whether a victim consents to sexual exploitation is irrelevant to its criminality.  *Ortiz-Graulau v. United States*, 756 F.3d 12, 22 (1st Cir. 2014) (holding that "any facts about the consensual and allegedly non-exploitable nature" of the relationship between a defendant and the victim in a child pornography production case "could not have supported a legally permissible defense"); *United States v. Raplinger*, 555 F.3d 687, 692 (8th Cir. 2009) (finding district court "correctly stated the law" when it instructed jury in a § 2251(a) prosecution that "a minor may not legally consent to being sexually exploited."); *United States v. Sibley*, 681 Fed. App'x. 457, 461 (6th Cir. 2017) (approving district court's jury instruction in a § 2251(a) prosecution that "'[a] minor may not legally consent to being sexually exploited.'"). Thus, an argument along the same lines should likewise be precluded.

### E. The Government Should Be Permitted to Rely on Trade Inscriptions to Prove the Country of Origin for Electronic Devices

The government intends to subpoena representatives from Samsung and Seagate to testify that the electronic devices set forth above were manufactured in China.  This is relevant to demonstrate that these devices were shipped in interstate and/or foreign commerce, thereby satisfying the jurisdictional elements of Counts

One, Two, and Three.   To the extent that live witnesses are unavailable to testify at trial (and the defendant will not enter into an appropriate stipulation), the government intends to rely on the trade inscriptions located on these devices, as shown in the above photos.   These trade inscriptions are admissible under the hearsay rules – either because they are not hearsay, or because they are admissible under the residual hearsay exception.   FRE 807.

Trade inscriptions are not hearsay, but circumstantial evidence of the product's manufacture; thus, they are not "statements" regulated by the hearsay rules.   FRE 801(c); *United States v. Bowling*, 32 F.3d 326, 328 (8th Cir. 1994); *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1992) (admitting a firearm with an inscription that it was made in Spain to prove the interstate commerce element), *overruled on other grounds by Kawashima v. Mukasey*, 530 F.3d 1111, 1116 (9th Cir. 2008).   Multiple courts have followed this reasoning in admitting similar trade inscriptions.   *See United States v. Gutierrez*, 625 Fed. App'x. 888, 896 (10th Cir. Sept. 14, 2015) (manufacturer's "made in China" stamp not a statement and therefore admissible as evidence of country of origin in child pornography case) (citing cases in support); *United States v. Scott*, No. 13-CR-164, 2014 WL 2808802 at *3 (E.D. Va. June 20, 2014) (applying the *Alvarez* holding to cell phones and a memory card in a child pornography trial); *United States v. Brown*, No. 08-CR-06, 2009 WL 2090193 at *11 (S.D. Ind. July 13, 2009) (admitting a hard drive with a "Product of Malaysia" inscription in child pornography trial).

24

But even if a trade inscription were a statement within the meaning of FRE 801(c), it should be admitted under the residual exception to hearsay as it meets all of the conditions of FRE 807 – as this Court did previously in *United States v. Thomas Noble*, Crim. No. 18-cr-00015-LPS (D.I. 120). *United States v. Boles*, 914 F.3d 95, 109 (2d Cir. 2019); *United States v. Burdulis*, 753 F.3d 255, 263-64 (1st Cir. 2014).   The inscription has circumstantial guarantees of trustworthiness because federal law regulates inscriptions regarding foreign origin and prohibits misleading designations of origin.   *See* 19 U.S.C. § 1304; 15 U.S.C. § 1125; *Burdulis*, 753 F.3d at 263. Moreover, the trade inscriptions are evidence of a material fact, namely that the electronic devices travelled in interstate or foreign commerce as set forth above. Third, the trade inscription is more probative of this issue than any other evidence; indeed, to some degree it is more probative than a live witness on the subject.  Finally, admitting this evidence will best serve the purposes of these rules and the interests of justice because it will ensure that highly probative and reliable evidence is submitted to the jury on an issue that is not genuinely in dispute. *Boles*, 914 F.3d at 109.

## F. The Court Should Admit the Victims' Birth Certificates Pursuant to FRE 803(9)

The government intends to introduce certified copies of the birth certificates for MINOR A and MINOR B into evidence as proof of their age – a relevant element for Counts One, Two, and Three.   The government has provided these materials to the defendant in discovery, along with a records certification that they are "correct copies of official records that were report to, filed in, and kept by a public office as

required by Delaware law (16 Del. C. § 3121 *et seq.*).”[10]   Thus, the Court should admit

these documents pursuant to FRE 803(9) (hearsay exception for a “record of birth,

death, or marriage, if reported to a public office in accordance with a legal duty”).

## CONCLUSION

For all of the above reasons, the Motions in Limine set forth above should be

granted.

Respectfully submitted,

DAVID C. WEISS
United States Attorney

By: /s/ Shawn A. Weede
Shawn A. Weede
Graham L. Robinson
Assistant United States Attorneys

Dated:  August 16, 2021

---

[10] The government does not attach these records here, as they contain the names of
the victims.  It will bring them to the pretrial conference so that the Court may
examine them if it chooses.